## STATE OF MINNESOTA *vs.* PETER CZIZEK.

### February 10, 1888.

**Embezzlement by City Treasurer.**—Under Gen. St. 1878, c. 95, § 36, a city treasurer, who improperly neglects or refuses to pay over moneys of the city intrusted to him in his official capacity, according to the provisions of law, is guilty of embezzlement.

**Same—Evidence held Sufficient for Conviction.**—Conviction sustained, where it was shown, by evidence undisputed and unexplained, that the defendant had received money belonging to the city, which he had not paid out in discharging claims against the city or otherwise in his official capacity, nor paid over to his successor, on the lawful demand of the latter, and which remained wholly unaccounted for at the trial.

**Same—Intent to Defraud.**—In such case, if the default is clearly the result of negligence and mismanagement of his trust, it is immaterial that no actual or deliberate purpose to defraud the city is shown.

Defendant was tried and convicted in the district court for Clay county, before *Collins,* J., (acting for the judge of the 14th district,) and a jury, on an indictment for embezzling the funds of the city of Moorhead. The jury in their verdict fixed the amount embezzled by defendant at $6,135. Defendant appeals from an order refusing a new trial.

*O. Mosness* and *J. E. Greene,* for appellant.

*Moses E. Clapp,* Attorney General, and *W. B. Douglas,* for the State.

VANDERBURGH, J. The defendant was treasurer of the city of Moorhead, in this state, from the 20th day of March, 1883, to the 5th day January, 1884, when he resigned the office. He was then a defaulter to the city, and was subsequently indicted, tried, and convicted of the crime of embezzlement, under Gen. St. 1878, c. 95, § 36. By this section, if a city or county treasurer improperly neglects or refuses to pay over any moneys of the city or county intrusted to him in his official capacity, when lawfully required so to do, he is guilty of embezzlement. *State* v. *Munch,* 22 Minn. 67, 72; also *State* v. *Ring,* 29 Minn. 78, 85, (11 N. W. Rep. 233.) That the defendant received

moneys belonging to the city as such treasurer, and which he neglected to pay over to his successor upon his demand, and which he has failed to account for to the city, is indisputable upon the evidence returned, and is not seriously questioned by his counsel. The only questions in the case which seem to require examination are (1) in respect to the amount of the defalcation, and (2) whether there were any errors of law occurring at the trial which were prejudicial to the defendant's rights.

1. The evidence shows that monthly reports were made by him to the city council of the amount of corporate funds in his hands as treasurer, from which it appears that on the 30th day of April, 1883, there was a balance in the treasury of $3,459.64; on June 30, 1883, the sum of $22,115.84; and on October 31, 1883, the sum of $14,-015.28; and these several statements were signed by defendant as city treasurer. The evidence also shows that the defendant, while city treasurer, kept his personal account with the First National Bank of Moorhead, and that he kept no separate account there as treasurer. That in the latter part of May he drew a draft on Preston, Kean & Co., bankers of Chicago, for $20,330, being proceeds of bonds of the city for bridge purposes, and left the same with the bank for collection; that the same was duly forwarded and collected by the bank, and the amount thereof placed to the credit of defendant, in his account. The officers of the bank understood that it was collected for the city, but the defendant had notice that it was credited in his account, as he kept but one, and it is admitted upon the record that the deposit-book used by him in making deposits showed this entry, and also showed a balance in his favor, June 1st, of $20,-458.22, and that the same was balanced July 5, August 1, September 2, October 1, November 2, December 5, 1883, and January 5, 1884; and that the balance to his credit in the bank on the last date was $235.60. Checks were drawn by him indiscriminately, it seems, upon the bank against his account, for his own use and for city purposes. Defendant kept separate books of account with the city. These books disclose a large balance due the city, amounting to $14,316 on the 5th day of January, 1884. It is admitted, however, that $2,500 of this has been paid by the defendant on account

v.38m—13

of bridges, and that he turned over also the amount of his salary, $400, to be credited on his account.

Again, the questions of fact litigated by the defendant relate almost exclusively to the disposition made of the bridge fund of $20,330, placed on deposit in the bank. But apart from this, the books of his office show the following amounts standing to the credit of the city, and unaccounted for, viz.:

| | | |
|---|---:|---:|
| General fund, | $4,345 00 | |
| Interest fund, | 92 61 | |
| Sinking fund, | 112 55 | |
| Sidewalk fund, | 1,394 61 | |
| Municipal court fund, | 212 51 | |
| | | $ 6,157 28 |
| Also North side bridge fund, | $5,241 13 | |
| South side bridge fund, | 2,917 61 | |
| | | 8,158 74 |
| | | $14,316 02 |

Of the South side bridge fund it is admitted that $2,500 was paid as above stated.

The reception of the books was objected to by defendant, but, upon the evidence before us, we are unable to see why they were not properly received, and their accuracy is in no way drawn in question, except as to the single item referred to. Aside from the bridge funds deposited with the bank, there appears, therefore, to be a deficit of $6,157.28.

It is further admitted that the defendant had on hand, on entering upon the duties of his office, March 20, 1883, the sum of $2,700; and it also appears, from the testimony of the comptroller of the city, that between the dates in question the defendant also received, for city purposes, divers sums, amounting in all to $41,983.50; and that there was paid out by him on account of the city the sum of $23,407.44, in addition to the amount paid on account of the bridge funds; and that he had also paid upon the latter the sum of $14,340.75. Apart from the $400, allowed for his salary, this will leave a deficit of at least $6,900. The jury fixed the amount in their verdict at $6,135, and

upon the record returned to this court there is no reason to question that it was at least equal to that sum.

No attempt was made by the defendant on the trial to contradict, impeach, or explain the evidence as to the amount of the deficit. The amount standing to his credit in the bank was paid out upon the checks of the defendant, or upon his acceptances payable at the bank, or upon his own notes payable to or at the bank, and there is no dispute that they were his own just debts. In his testimony he does not recollect that he gave checks, or authorized the payment of certain of his notes to the bank, to the amount of $2,000, but in his cross-examination he is unable to explain the evidence of checks for the amount thereof issued by him.

2. In view of the undisputed testimony as to the state of his accounts and his manner of doing business, it was entirely immaterial whether the officers of the bank knew that a portion of the amount standing to his credit belonged to the city, or that he expected they would take care that the same was not applied on his individual indebtedness. The evidence on these and kindred questions was properly rejected. Defendant knew—or, if he did not know the state of his accounts at the bank, it was culpable negligence on his part not to inform himself in respect to the matter, and no legal excuse was shown or offered to be shown on the trial for mingling the funds of the city with his own. He knew, or ought to have known, that these funds were being applied on his own account; and as the transactions with the bank extended over many months, and his deposit-book was frequently balanced in the mean time, no shadow of excuse appears for the apparent gross negligence and carelessness which characterized his management of the trust committed to him. A clear *prima facie* case was made by the state, under the section of the statute referred to, of improper neglect and failure on the part of the defendant to pay over, according to the provisions of law, and upon proper demand, the public moneys intrusted to him as city treasurer.

The evidence of the defendant on the trial is returned in full. We have carefully examined it, and fail to find in it anything tending to justify his failure to account for the funds, or to relieve him from the charge of negligence and mismanagement in the premises. It is un-

necessary, therefore, to consider whether the indictment, or evidence under it, is sufficient to sustain the charge of actually appropriating and converting the money by the defendant to his own use or not. It is sufficient to rest the case upon the clause of the statute above quoted. And since the law enjoins and the officer assumes the responsibility of due diligence and careful management in guarding the public funds, it is not material, under the statute, where the default is the result of negligence, that there was no actual or deliberate purpose on the part of the defendant to rob or defraud the city.

Among other assignments of error, the defendant complains that the court, at the opening of his examination in chief by his counsel, ruled out the following question: "Of the $20,330 which was placed in the First National Bank, was any of that money paid out by the bank without your authority?" The officers of the bank had already testified in detail touching the transactions of the defendant with the bank. It was therefore proper to require the examination of the defendant to take the same course. It was certainly in the discretion of the court to so require, instead of allowing the witness to swear generally to his own conclusion as to the effect or interpretation of the acts and relations of the parties, and no prejudice could have resulted, since the defendant was afforded full opportunity to testify in reference to each particular transaction. So, generally, in respect to his personal knowledge of the manner in which his books were kept by his clerk, or whether he signed receipts and vouchers upon the statement of the latter, without actual knowledge of the facts, the evidence offered was properly rejected. It is not claimed that there was any fraud or inaccuracy in any of the transactions. It is apparent that a clear and substantially undisputed case of embezzlement under the statute is presented by the record. This renders it unnecessary to examine in detail the numerous exceptions to the rulings and charge of the court upon the trial, none of which, it seems to us, could have prejudiced the legal rights of the defendant.

Order affirmed, and case remanded for further proceedings.